UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STATE OF WEST VIRGINIA, ex.rel.,
DARRELL V. McGRAW, JR.,
Attorney General,

      Plaintiffs,

v.                                    Civil Action No. 2:09-0956

RITE AID OF WEST VIRGINIA, INC.,
a West Virginia corporation,

      Defendants.

MEMORANDUM OPINION AND ORDER

      Pending is plaintiff's motion to remand, filed

September 1, 2009.

I

      West Virginia law requires pharmacists to "substitute a

less expensive equivalent generic name drug" for prescriptions

for a brand name drug unless the generic drug is unsuitable for

the particular patient.  W. Va. Code § 30-5-12b(b).  Further,

West Virginia law requires that "[a]ll savings in the retail

price of the [generic] prescription . . . be passed on to the

purchaser," and that "in no event shall such savings be less than

the difference in acquisition cost of the brand name product

prescribed and the acquisition cost of the substituted product."
Id. at § 30-5-12b(g).

On July 23, 2009, plaintiff filed this action in the
Circuit Court of Boone County, alleging that "defendants
routinely violate this law and do not pass on generic-drug cost-
savings to purchasers as the statute requires."  (Compl. ¶ 20).
Plaintiff's complaint contains three counts: 1) violations of
West Virginia's generic-drug pricing law, W. Va. Code § 30-5-
12b(g); 2) violations of the West Virginia Consumer Credit and
Protection Act; and 3) impermissible collection of excess charges
under West Virginia Code § 46A-7-111(1).  (Id. at ¶¶ 23-35).

Rite Aid removed the case on August 21, 2009.  As
grounds for removal, Rite Aid stated that the Federal Medicaid
program, which establishes maximum prices for generic drugs
within that program, vests the court with original jurisdiction
under 28 U.S.C. § 1331 as the case involves a substantial and
disputed federal question.  On September 1, 2009, plaintiff filed
the pending motion to remand, to which Rite Aid filed its
response on September 29, 2009.

2

II

Title 28 U.S.C. § 1441(a) governs federal removal jurisdiction.  The statute provides pertinently as follows:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants . . . to the district court of the United States for the district and division embracing the place where such action is pending. . . .

28 U.S.C. § 1441(a).   One source of original jurisdiction is 28 U.S.C. § 1331, which provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  <u>Id.</u>

> In determining whether a plaintiff's claim arises under federal law, we apply the well-pleaded complaint rule, which holds that courts "ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." <u>Custer v. Sweeney</u>, 89 F.3d 1156, 1165 (4th Cir. 1996). Thus, in examining the complaint, our first step is to "discern whether federal or state law creates the cause of action." <u>Mulcahey</u>, 29 F.3d at 151; <u>see also</u> <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 816 (4th Cir. 2004) ("The vast majority of lawsuits 'arise under the law that creates the cause of action.' ") (quoting <u>Am. Well Works Co. v. Layne & Bowler Co.</u>, 241 U.S. 257, 260, 36 S. Ct. 585, 60 L. Ed. 987 (1916)). If federal law creates a plaintiff's claim, then removal is proper. <u>Mulcahey</u>, 29 F.3d at 151. The general rule, of course, is that a plaintiff is the "master

> of the claim," and he may "avoid federal jurisdiction by
> exclusive reliance on state law" in drafting his complaint.
> <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392, 107 S. Ct.
> 2425, 96 L. Ed.2d 318 (1987).

<u>Pinney v. Nokia, Inc.</u>, 402 F.3d 430, 442 (4th Cir. 2005).  In

this case, just as in <u>Pinney</u>, "it is undisputed that state law

creates the claims asserted by the . . . plaintiff[], but this

does not end our inquiry." <u>Pinney</u>, 402 F.3d at 442.

Rite Aid relies on federal "arising under" jurisdiction

as elucidated in <u>Grable & Sons Metal Products, Inc. v. Darue

Engineering & Mfg.</u>, 545 U.S. 308 (2005).  In <u>Grable</u>, the United

States Supreme Court considered "another longstanding, if less

frequently encountered, variety of federal 'arising under'

jurisdiction, . . . having recognized for nearly 100 years that

in certain cases federal-question jurisdiction will lie over

state-law claims that implicate significant federal issues."  <u>Id.</u>

at 312.  The Court in <u>Grable</u> established the test for determining

whether a "substantial question of federal law" sufficient to

warrant removal exists:

> The question is, does a state-law claim necessarily raise a
> stated federal issue, actually disputed and substantial,
> which a federal forum may entertain without disturbing any
> congressionally approved balance of federal and state
> judicial responsibilities.

<u>Id.</u> at 314.  In doing so, the Court emphasized that merely

alleging a "federal issue" does not operate "as a password

4

opening federal courts to any state action embracing a point of federal law." Id. Few cases can be "squeezed into the slim category Grable exemplifies." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 704 (2006); see also Wright & Miller, Federal Prac. And Proc. § 3562 ("Obviously, not every state-law claim raising a federal issue can invoke federal question jurisdiction. Indeed, such cases will be exceptional.")

Nevertheless, Rite Aid contends that the "inevitable clash between the State's Complaint and federal law," specifically the Federal Medicaid program, satisfies the inquiry as laid out in Grable and vests this court with subject matter jurisdiction over plaintiff's claims.[1] (Def.'s Resp. at 11). In order to establish this rare type of "arising under" federal jurisdiction, Rite Aid must demonstrate that each of the three prongs of the Grable test are met: 1) the case necessarily raises a federal issue; 2) the federal issue is substantial and in actual dispute; and 3) the exercise of federal jurisdiction will

---

[1] While Rite Aid's notice of removal specifies that plaintiff's complaint creates "substantial and disputed federal questions under the Federal Medicaid program as enacted under Title XIX of the Social Security Act of 1965," Rite Aid has also argued that the Federal Medicare program creates a substantial and actually disputed federal issue for the same reasons. (Notice of Removal at 2). The court focuses its Grable analysis on the issue of Medicaid inasmuch as it was the stated ground for removal, but the court's rationale is equally applicable to a Medicare argument under Grable.

not disturb any congressionally approved balance of federal and state judicial responsibilities.  <u>Grable</u>, 545 U.S. at 314.

Rite Aid contends that plaintiff's claims involve a substantial and actually disputed federal issue inasmuch as plaintiff's claims create a conflict between the West Virginia Pharmacy Law and the controlling federal statutes.  (Def.'s Surreply at 3).  "The United States Department of Health and Human Services is charged with setting the maximum price which may be charged for individual drugs for reimbursement under Medicaid."  (Def.'s Resp. at 12).  Because "[t]hese prices are based on the federal government's calculation of average wholesale prices for individual drugs," Rite Aid asserts that the court will be required to interpret and reconcile the meaning of 'average wholesale price' in federal law with the meaning of 'acquisition cost' in the state statute. (Id.)  Rite Aid notes that because "federal dollars fund a substantial portion of West Virginia's Medicaid program, meaning that federal funds are at issue," further indicates the "significance of the federal interest here."  (Id. at 12).

The court is not persuaded that there is an "actually disputed and substantial" federal issue embedded within plaintiff's state-law claims as required for federal question

6

jurisdiction under <u>Grable</u>.  Federal law does establish the
maximum price which may be charged for individual drugs to be
paid for by Medicaid, see 42 C.F.R. § 447.512, but plaintiff does
not claim that Rite Aid is in violation of the Medicaid pricing
scheme or any other federal law.  As plaintiffs aptly note,
plaintiff's "claims will stand or fall on whether Rite Aid
dispenses drugs in accordance with West Virginia's generic-drug
pricing law."  (Pl.'s Reply to Def.'s Surreply at 9).  As such,
plaintiff's "ability to prevail on its claims in no way depends
on any showing of a violation of federal law or resolution of a
disputed federal issue, as <u>Grable</u> requires."  (<u>Id.</u>).

     The circumstances that justified the finding of federal
jurisdiction in <u>Grable</u> are markedly different.  The plaintiff in
<u>Grable</u> brought a quiet title action against a tax sale purchaser,
alleging the Internal Revenue Service had not given him adequate
notice of sale as required by federal law.  <u>Grable</u>, 545 U.S. at
311.  Accordingly, <u>Grable</u> was "centered on the action of a
federal agency (IRS) and its compatibility with a federal
statute, the question qualified as 'substantial' and its
resolution was both dispositive of the case and would be
controlling in numerous other cases."  <u>Empire Healthchoice</u>, 547
U.S. at 700.  In order to resolve the plaintiff's claims, it was

7

necessary as an initial matter to determine whether the federal agency had complied with federal law.  Here, unlike Grable, each of plaintiff's claims can be resolved without any significant consideration of federal law.

Rite Aid asserts that "[n]umerous courts presented with circumstances analogous to those presented here have concluded that federal jurisdiction exists over state law claims."  (Def.'s Resp. to Motion to Remand at 13).  Rite Aid primarily relies on three cases decided in the Eastern District of New York to support its Grable argument.  In re Zyprexa Products Liability Litigation, 2008 WL 398378 (E.D.N.Y. 2008) ("Montana Zyprexa"); West Virginia ex rel. McGraw v. Eli Lilly & Co., 476 F. Supp. 2d 230 (E.D.N.Y. 2007) ("West Virginia Zyprexa");  In re Zyprexa Products Liability Litigation, 375 F. Supp. 2d 170 (E.D.N.Y. 2005) ("Louisiana Zyprexa").  Judge Weinstein decided these Zyprexa cases following their assignment to the Eastern District of New York pursuant to order by the Judicial Panel on Multidistrict Litigation.  In those three cases, states brought various state-law claims against Zyprexa's manufacturer, seeking to recover  costs incurred as a result of the manufacturer's allegedly wrongful promotion of Zyprexa and its harmful side

8

effects.[2]  Among other things, the states specifically sought
reimbursement for payments made with federal funds under the
states' Medicaid programs.  Noting the desirability of
"[u]niformity in treating claims brought in this multidistrict
litigation," the court held that "the question of the state's
obligation to reimburse its insured for prescription drugs, using
funds largely provided by the federal government, is essential to
the state's theory of damages and presents an unavoidable central
and disputed federal issue."  Montana Zyprexa, 2008 WL 398378 at
*3.  As a consequence of its reasoning, the court found 'arising

---

[2]  In Montana Zyprexa, the complaint alleged violations of
Montana statutory and common law, including violations of Montana
Consumer Protection Act, the Montana False Claims Act, the
Montana Food, Drug and Cosmetic Act, and common law claims of
fraudulent misrepresentation and unjust enrichment.  2008 WL
398378 at *1.  Montana's complaint focused primarily on the
state's claim that Zyprexa's manufacturer "devised elaborate
schemes to market Zyprexa for so-called "off-label" uses –
indications not approved by the FDA."  Id. at *2.

    In West Virginia Zyprexa, the complaint alleged violations
of the West Virginia Consumer Credit & Protection Act, violation
of the Fraud and Abuse in the Medicaid Program Act, and common
law fraudulent misrepresentation.  476 F. Supp. 2d at 231.  West
Virginia's complaint claimed injuries arising from payments for
drugs the state was required to cover under the federal Medicaid
program.  Id. at 233.

    In Louisiana Zyprexa, the complaint sought reimbursement for
payments made by the state with its own funds and federal funds
in its Medicaid program.  375 F. Supp. 2d at 171.  Louisiana
alleged that the drug was prescribed and used for "off-label"
purposes.  Id.

under' jurisdiction under the three-pronged test of <u>Grable</u> and declined to remand the cases.

The Zyprexa cases from the Eastern District of New York, however, are distinguishable from the case at hand.  The states in the Zyprexa cases were required by the federal Medicaid program to cover Zyprexa under their individual state Medicaid programs.  In contrast, plaintiff's claims here do not involve a similar federal mandate.  Interpretation of the West Virginia Pharmacy Law does not facially necessitate consideration of any federal law.  Resolution of plaintiff's claims may be achieved simply by evaluating whether Rite Aid complied with state law.

Furthermore, plaintiff correctly notes there are a significant number of cases that have declined to find federal jurisdiction under <u>Grable</u> in circumstances similar to those in the three Zyprexa cases decided in the Eastern District of New York.  <u>See</u> <u>Utah v. Eli Lilly & Co.</u>, 509 F. Supp. 2d 1016 (D. Utah 2007)("<u>Utah Zyprexa</u>"); <u>Pennsylvania v. Eli Lilly & Co.</u>, 511 F. Supp. 2d 576 (E.D. Pa. 2007)("<u>Pennsylvania Zyprexa</u>") ; <u>Hawaii v. Abbott Labs., Inc.</u>, 469 F. Supp. 2d 842, 852 (D. Haw. 2006); <u>Wisconsin v. Abbot Labs., Inc.</u>, 390 F. Supp. 2d 815 (W.D. Wis. 2005); <u>Pennsylvania v. Tap Pharm. Prods. Inc.</u>, 415 F. Supp. 2d

516 (E.D. Pa. 2005).[3] In these cases, states brought various state-law claims of fraud and misrepresentation against pharmaceutical companies that they accused of inflating the average wholesale price of drugs. The pharmaceutical companies argued that the states' claims contained "substantial and actually disputed" federal issues because they required interpretation of the term "average wholesale price" as set forth in the federal Medicaid regulations. These courts concluded that, while these cases would likely require a discussion of that term, the states' allegations did not hinge upon the interpretation of federal law and added, "it takes more than a federal element to open the 'arising under' door." Pennsylvania v. Eli Lilly & Co., Inc., 511 F. Supp. 2d at 583 (quoting Empire Healthchoice, 547 U.S. at 701). Accordingly, these courts remanded the states' claims.[4]

---

[3] In addition to the Zyprexa cases remanded in Utah and Pennsylvania, Zyprexa cases with facts identical to those in the cases from the Eastern District of New York were remanded in unpublished decisions in Alaska and South Carolina. South Carolina ex rel. McMaster v. Eli Lilly & Co., 2007 WL 2261693 (D.S.C. Aug. 3, 2007); Alaska v. Eli Lilly & Co., 2006 WL 2168831 (D. Ala. July 28, 2006).

[4] Reaching a contrary result is State of Arizona v. Abbott Labs, Inc., 457 F. Supp. 2d 77 (D. Mass. 2006), wherein the state sought to recover, in part on behalf of Medicaid beneficiaries, from pharmaceutical companies alleged to have grossly inflated the price of drugs by misstating the Medicaid average wholesale price. The court, while noting post-Grable cases finding otherwise, concluded that a federal issue was thereby presented.

After reviewing the Zyprexa cases in the Eastern
District of New York with the Zyprexa and other cases brought in
the other four districts above cited, the court finds the
rationale and result in the latter cases more persuasive.  They
represent the majority view of courts considering state-law
claims involving the average wholesale price of prescription
drugs.

Moreover, the consideration of average wholesale price
is at most incidental in this case.  As previously noted, all
that is necessary to determine whether Rite Aid complied with the
West Virginia Pharmacy Law is to determine whether Rite Aid
passed on the savings from generic drugs to the consumers.  This
analysis does not implicate federal Medicaid regulations and,
thus, is not a substantial or actually disputed federal issue as
required under Grable.[5]

Additionally, Rite Aid cites Municipality of San Juan
v. Corporacion Para El Fomento from the First Circuit as support
for its contention that the substantial amount of federal funds
involved here buttress defendant's position that the court should

_____

[5] It is also worthy of notice that the state chose to
exercise its right to bring its claims in its own capacity and as
parens patriae on behalf of Medicare beneficiaries in State of
Arizona v. Abbot Labs, Inc.  in contrast to the plaintiff in this
case who proceeds solely in its capacity as a state.

12

find federal jurisdiction under Grable.  415 F.3d 145, 148 n. 6
(1st Cir. 2005).  In that decision, the First Circuit observed in
a footnote that federal jurisdiction was proper "[b]ecause the
propriety of [the defendant's] conduct turns entirely on its
adherence to the intricate and detailed set of federal regulatory
requirements, and the funds at issue are federal grant monies"
provided by the United States Department of Housing and Urban
Development.  Id.  While the presence of federal funds is a
factor to be considered, federal jurisdiction does not exist in
every situation involving federal funds.  As in Corporacion Para
El Fomento, there must be something more than the presence of
federal funds; some substantial federal issue is required in
order for a case to fit within the "slim category" that Grable
created.  See also Pennsylvania v. Eli Lilly & Co., Inc., 511 F.
Supp. 2d at 585 ("Similarly, the fact that a federally created
program, Medicaid, serves as the initial source of the funds the
[state] seeks to recover does not, without more, confer federal
jurisdiction."); Utah v. Eli Lilly & Co., 509 F. Supp. 2d at
1023.

        Even assuming, arguendo, that the federal Medicaid
program is implicated by plaintiff's claim in some limited
degree, "Grable emphasized that it takes more than a federal

13

element 'to open the 'arising under' door." Empire Healthchoice,
547 U.S. at 701 (quoting Grable, 545 U.S. at 313).  Simply
touching upon a federal issue is not sufficient to qualify as
"substantial and actually disputed" under the Grable test.
Where, as here, tenuous connections to federal law exist, state
courts are "competent to apply federal law, to the extent it is
relevant." Empire Healthchoice, 547 U.S. at 701.[6]

It is also to be noted that if, as appears likely, Rite
Aid asserts conflict preemption as a defense to plaintiff's
claims, it has long been established that a federal defense does
not establish federal-question jurisdiction. Merrell Dow Pharm.
Inc. v. Thompson, 478 U.S. 804, 808 (1986). Unlike the doctrine
of complete preemption, conflict preemption is not an independent
ground for finding federal jurisdiction. Pinney, 402 F.3d. at
449; King, 337 F.3d at 425. Rather, the federal defense of

_____

[6] It is worthy of notice that on November 24, 2009, Judge
Robert J. Jonker in the Western District of Michigan remanded two
cases involving nearly identical claims to those in this case.
There, the plaintiffs claimed that defendants violated state law
requiring that the savings from generic drugs be passed on to
consumers. In both of those cases, the defendants attempted to
establish federal question jurisdiction under Grable. In a
hearing on the issue held November 24, 2009, Judge Jonker ruled
that the cases did not fall within the slim category of Grable
and remanded both. State of Michigan ex rel. Gurganus v. CVS
Caremark Corp., et al., 1:09-cv-0776, Docket No. 61 (W.D. Mich.
Nov. 25, 2009); City of Lansing, et al. v. Rite Aid of Mich.,
Inc. et al., 1:09-cv-0777, Docket No. 40 (W.D. Mich. Nov. 24,
2009).

**14**

conflict preemption may be properly raised in state court following remand.  See e.g. Caterpillar, Inc., 482 U.S. at 397; King, 337 F.3d at 425.

Inasmuch as Rite Aid has failed to establish a "substantial and actually disputed" federal issue embedded within the plaintiff's state-law claims, the court declines to find federal question jurisdiction under Grable.


III


As already observed, Rite Aid proffered the Federal Medicaid program as the sole ground for removal in the notice of removal filed August 21, 2009.  (Notice of Removal at 2). However, in its response to plaintiff's motion to remand, filed September 29, 2009, Rite Aid argued two additional justifications for removal: the Federal Employees Health Benefits Act (FEHBA) and the Employee Retirement Income Security Act (ERISA).  Rite Aid has not moved to amend the notice of removal to include these claims as grounds for removal.  Plaintiff contends that Rite Aid has waived its FEHBA and ERISA arguments inasmuch as they were not included in the notice of removal.

After receiving service of plaintiff's complaint, a defendant has thirty days to file a notice of removal. 28 U.S.C. § 1446(b). As a general rule, "removal statutes must be strictly construed <u>against</u> removal." <u>Castle v. Laurel Creek Co., Inc.</u>, 848 F.Supp. 62, 65 (S. D. W. Va. 1994)(citing <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993))(emphasis in original). "The burden is on the party seeking to preserve the district court's jurisdiction, typically the defendant, to show that the requirements for removal have been met." 14C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3739 (4th ed. 2009). "Prior to the expiration of the 30-day period for removal . . ., the defendants may freely amend the notice of removal required by Section 1446(b)." <u>Id.</u> at § 3733. After the thirty days have expired, defendants may be allowed to amend the notice of removal to "correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount," but generally "defendants may not add completely new grounds for removal or furnish missing allegations." <u>Id.</u>; <u>see also</u> <u>Rehman v. Basic Moving</u>, Slip Opinion, 2009 WL 1392149 (W.D. Pa. 2009)(concluding defendant was prohibited from relying upon any additional statutory bases to support federal question

16

jurisdiction that were not pled in the notice of removal) ; <u>Hahn</u>
<u>v. Rauch</u>, 602 F. Supp. 2d 895 (N.D. Oh. 2008)(same); <u>Schepis v.</u>
<u>Local Union No. 17, United Brotherhood of Carpenters and Joiners</u>
<u>of America</u>, 989 F. Supp. 511 (S.D.N.Y. 1998)(same); <u>Am. Educators</u>
<u>Fin. Corp. v. Bennett</u>, 928 F. Supp. 1113 (M.D. Ala. 1996)(court
rejected defendant's amended notice of removal because it raised
additional grounds for finding federal question jurisdiction
outside the thirty day period).

        Here, Rite Aid has not moved to amend its notice of
removal to include FEHBA or ERISA as grounds for removal, but has
instead included them within its arguments in opposition to the
plaintiff's motion to remand.  This is an impermissible "attempt
to use [the response brief] in order to amend an earlier notice
of removal." <u>Griessel v. Mobley</u>, 554 F.Supp.2d 597, 606 (M.D.
N.C. 2008).  Strictly applying the removal statutes in favor of
removal, Rite Aid's FEHBA and ERISA arguments are untimely and
will not be considered by the court.[7]

_____

        [7] It should be noted that Rite Aid has in all likelihood
lost the opportunity to amend its notice of removal to include
FEHBA and ERISA claims.  The thirty day statutory time period
allowed for freely amending the notice of removal has expired.
<u>See</u> 28 U.S.C. § 1446(b).  While some circumstances may justify
allowing an amendment after the thirty day period has lapsed,
those circumstances do not exist in this instance.  <u>See</u> 28 U.S.C.
§ 1653.  Here, Rite Aid seeks to add two entirely independent
grounds for removal whereas generally only technical corrections
and changes of a minor nature are permissible after the thirty

IV


Based upon the foregoing, the court concludes that it lacks subject matter jurisdiction.  The court, accordingly, ORDERS that plaintiff's motion to remand be, and it hereby is, granted.  The court further ORDERS that this action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Boone County.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties and a certified copy to the clerk of court for the Circuit Court of Boone County.

DATED:  February 1, 2010


John T. Copenhaver, Jr.
United States District Judge


---

day period has expired.  14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3733.  Rite Aid is seeking an impermissible "substantial and material" amendment. Id.

18